Clare J. Hoyt, J.
This is an action to enjoin the defendants (called herein “ Hopper “ Union Free School District ” and “ Central School District ”, respectively in the order in which they are named as defendants herein) perpetually and during the pendency of this action. Plaintiff seeks this injunction to prevent the performance by Hopper of plumbing work in the construction of schools of Union Free School District and Central School District in the Town of Poughkeepsie until Hopper shall have submitted its plans and received a permit and certificate of competency from the Board of Plumbing *762 Examiners of plaintiff and until it shall have employed a master plumber licensed by said board. It is sought further to enjoin the two school districts from contracting with or employing any person or firm who has not met the requirements of the plaintiff’s Plumbing Board.
A preliminary injunction was granted on March 3, 1965 as to Hopper. The injunction was denied as to the defendant school districts.
Defendants appealed to the Appellate Division, Second Department, which affirmed the order of Special Term (23 A D 2d 884) and the parties thereafter agreed to the service of amended answers and a stipulation admitting certain allegations in the pleadings and containing an agreed statement of facts. Upon this stipulation the action was fully submitted.
From the pleadings and stipulation it is established that on November 2,1964 Union Free School District awarded a plumbing contract to Hopper for the Hagantown Elementary School at a contract price of $102,250 and that on July 8, 1964 Central School District awarded a plumbing contract to Hopper for the Sheafe Road School at a contract price of $57,545. Hopper, a domestic corporation with principal offices at Yonkers, New York, was in the process of commencing its work on the Hagantown School and had performed a substantial part of its contract on the Sheafe Road School at the time it was enjoined.
Plaintiff’s Plumbing Code and Ordinance provides that all new plumbing work be inspected to insure compliance with requirements of the code and to assure that the installation and construction of the system is in accordance with approved plans (art. 13, § 13.1.1); that it shall be unlawful for any person to work as a plumber unless he has passed an examination by the Board of Plumbing Examiners and has received therefrom a certificate of competency and a license (art. 14, § 14.1.1). A master plumber is defined as one licensed to engage in the business of installing plumbing as a contractor (art. 14, § 14.2.1) and to be licensed as such he must have such qualifications as deemed necessary by the Board of Plumbing Examiners (art. 14, § 14.2.2). Upon the certification of the competency of an applicant and upon his registry and payment of a fee, a license shall be issued (art. 14, § 14.2.5). Any firm or corporation engaged in the business of installing plumbing shall employ a master plumber licensed pursuant to the code (art. 14, § 14.2.7). Before any plumbing work is commenced, a permit must be obtained by the master plumber (art. 14, § 14.3.1). No permit shall be issued until detailed plans have been submitted assuring that they conform to the code provisions (art. 14, § 14.3.2). Plans which *763 indicate any noncompliance with the code shall be rejected and no permit shall be issued until they have been revised (art. 14, § 14.3.3).
Hopper submitted no plans for either contract and made no application for a certificate of competency or license nor did any employee in its behalf. Plaintiff advised Hopper and the school districts that Hopper’s performance of the contract was in violation of the code.
Plaintiff admits that the contracts between Hopper and the school districts were duly entered into pursuant to article 9 of the Education Law, article 5-A of the General Municipal Law and other provisions of law and the rules and regulations of the Commissioner of Education, after due approval of plans and specifications for the construction of the schools by the Commissioner of Education, after proper bidding and advertising and upon due determination that Hopper was the lowest responsible bidder on each contract.
The plans and specifications for the plumbing systems for each school were prepared by architects licensed to practice in New York State. They were approved by the respective school board of each defendant district. Pursuant to section 408 of the Education Law, the plans and specifications were submitted to the New York State Commissioner of Education for his approval. The Department of School Buildings and Grounds, a division of the State Education Department, reviewed the plans and specifications to determine whether the plumbing system conformed to the State standards set by the Commissioner of Education. These standards appear in a building code compiled by the Commissioner for the construction of schools. The Department of School Buildings and Grounds, on behalf of the Commissioner of Education, approved the plumbing system for the Sheafe Road School on July 6,1964 and approved the Hagantown plumbing system on October 30,1964.
Upon said approval the contracts for each school were let to Hopper and work was begun by it. During the course of construction inspections were made at each school. A clerk of the works was hired by each school board. Each was experienced in construction work with ability to supervise the installation of materials in accordance with the plans and specifications. They each had a minimum of 15 years’ experience as a supervisor on similar construction projects and each was hired by their respective school boards after an investigation and a determination of their qualifications. The clerk of the works was present on each job at all times and inspected all materials delivered to the job site to determine if the materials conformed *764 to the specifications and if their installation was in accordance with the plans. Each clerk of the works made daily reports to the architect indicating daily progress, the results of tests conducted during the day and any defects in materials or workmanship.
The architect engaged by each school board is a member of the American Institute of Architects, licensed to practice in the State of New York and qualified by the Commissioner of Education to design plans and specifications for public school buildings. A field representative of the architect visits the job site at least three times per week to inspect the materials in the system to determine whether they had been installed according to plans. The architect visits the job site at least once a week to inspect the materials and system.
A firm of plumbing engineers, licensed to practice in the State of New York, was retained by the architect to inspect and test the plumbing system to determine that its installation is in accord with the plans and specifications.
Upon completion of the work the architect is to make a final inspection and test on all plumbing work and thereupon will issue his certificate to each school board that the plumbing work is complete and that the system conforms to the plans and specifications as approved by the Commissioner of Education.
The plans and specifications provide for tests for the drainage system, water lines and mains and gas lines, all in the presence of the architect. The plumbing work completed at the time of the injunction was inspected and tested and complied with the Building Code of the Commissioner of Education and the plans and specifications approved by him.
Upon these facts, the issue is well defined: is the plumbing contractor who performs this work within the Town of Poughkeepsie in accordance with the requirements of the State Education Law and the General Municipal Law and the plans and specifications for the erection of two new public schools under contracts with the respective school boards subject to the regulations of plaintiff’s Plumbing Code 1
Two defenses are raised: first, that Hopper is exempt from the provisions of the code because it is working on public school contracts and second, that the code is unconstitutional. Since this case may be disposed of by reason of Hopper’s exemption from the provisions of the code, questions as to the constitutionality of the code are not reached.
The majority of the Appellate Division in affirming the order for a temporary injunction (23 A D 2d 884, 885) stated: “By our affirmance of the order, however, we have not reached and *765 do not pass: (a) upon the validity or constitutionality of the challenged provisions of the town’s plumbing code and ordinance; or (b) upon the merits of the action. All of the issues of law and fact are reserved for determination by the trial court upon the basis of the proof to be adduced.”
The minority, finding no issues of fact, voted to reverse the order, vacate the injunction and dismiss the complaint. The undisputed facts as recited by the minority are now clearly established. The reasoning of the minority is persuasive (pp. 885-886): “ We think the town may not assert such rights either against the school districts or the plumbing contractor. A school district is a governmental agency of the State, which has surrendered ‘ to it a portion of its [the State’s] sovereign power and delegated to it [the school district] a duty imposed upon the State by the Constitution (Art. IX, § 1) ’ (Herman v. Board of Educ., 234 N. Y. 196, 201; cf. Matter of Hirshfield v. Cook, 227 N. Y. 297, 301; Matter of Divisich v. Marshall, 281 N. Y. 170, 173). Thus, the defendant school districts have ‘ the responsibility of furnishing an efficient system of public education * * * and in this respect they are not subject to or controlled by the city authorities ’ (Matter of Fuhrmann v. Graves, 235 N. Y 77, 82). That responsibility includes the duty to select sites for school buildings and to construct buildings thereon (Education Law, §§ 401, 407, 408), subject to the supervisory power of the Commissioner of Education. As a depository of the sovereign power of the State, a school district is immune from the regulation of municipal zoning ordinances (Union Free School Dist. No. 14 of Town of Hempstead v. Village of Hewlett Bay Park, 279 App. Div. 618; cf. Matter of Diocese of Rochester v. Planning Bd., 1 N Y 2d 508, 522; Nehrbas v. Incorporated Vil. of Lloyd Harbor, 2 N Y 2d 190). We see no basic difference between an attempted regulation through a zoning ordinance and an attempted regulation through a building code or a plumbing code.”
The State Comptroller has held that a union free school district need not obtain a building permit required under the provisions of a village building code (6 Op. St. Comp., 1950, p. 376). He has held that a school district or a contractor engaged by a school district need not obtain a town building permit as required by the town building code (7 Op. St. Comp., 1951, p. 198) and that a school district is not subject to a town zoning ordinance and building code (8 Op. St. Comp., 1952, p. 285). And, finally, he has held that a local building inspector has no authority to inspect school construction (16 Op. St. Comp., 1960, p. 384).
*766 In County of Westchester v. Village of Mamaroneck (22 A D 2d 143 [2d Dept.]), the court determined that a county and the private contractors engaged by it in building an addition to a county sewage disposal system located within a village were exempt from village zoning ordinances and building codes. In reaching its decision the court noted at pages 146-147 that the New York State Comptroller: “ has ruled that school construction is exempt from municipal building codes and ordinances; that school districts need not obtain building permits from the municipalities in which the schools are to be built; and that school construction jobs are not subject to inspection by municipal building inspectors (16 Op. St. Comp., 1960, p. 384; 6 Op. St. Comp., 1950, p. 376).”
The court noted that as to nonschool buildings the State Comptroller had ruled that they were subject to municipal building codes and ordinances. The court then continued at page 147:
1 ‘ In these seemingly contradictory rulings, the Comptroller drew a distinction between schools and other government buildings. The distinction he drew was that sections 408 to 411 of the Education Law confer on the State Education Commissioner such broad powers of supervision over school construction that the Legislature must have intended him to have exclusive control over such construction; but that with respect to other government buildings, there was no such broad power of supervision given to any state official, and that the grant to villages of the general power to regulate building construction, contained in the statute (Village Law, § 89, subd. 7; § 90-a), evidenced legislative intent that government buildings (other than schools) be required to comply with village building codes and ordinances.
“ For several reasons we disagree with the Comptroller’s rulings regarding nonschool buildings.”
Although not necessary to the decision therein, implicit in this statement is an approval of the State Comptroller’s rulings exempting public school construction from local municipal regulations and inspections.
The court is aware of the decision in City of Kingston v. Bank (45 Misc 2d 176) enjoining an unlicensed plumber from performing a contract for the Kingston Board of Education in violation of the city plumbing ordinance. Special Term in granting the temporary injunction herein relied on this decision. In that case, however, the plans and specifications were submitted by the architect engaged by the Board of Education to the city plumbing inspector and the specifications themselves provided that inspections were to be made by the city plumbing inspector as well as by the architect. The defendant applied for a cer *767 tificate of competency, was examined and failed. It thus may be argued that the voluntary submission to the control and regulation of the municipal plumbing code in the Bank case distinguishes it from the case at bar. Apart from this distinction, however, this court adopts the minority decision of the Appellate Division herein {supra) to the effect that a school board is immune from a local municipal building or plumbing code.
Although plaintiff’s code provides for approval of plans and specifications and the inspection of the work performed thereunder, plaintiff now concedes that it does not have the power to pass upon the plans and specifications. It must take this position because of the provisions in the Education Law providing for the approval of plans and specifications by the Commissioner of Education (Education Law, § 408), provisions for compliance with the Commissioner of Education’s regulations to insure the health and safety of the pupils in relation to proper heating, lighting, ventilation, sanitation and health, fire and accident protection (Education Law, § 409) and the regulations adopted by the Commissioner of Education setting forth the requirements to obtain the approval of the Commissioner of Education for plans and specifications submitted to him (Regulations of the Commissioner of Education, § 155.1 et seq., 8 NYCRR 155.1 et seq.).
These provisions show clearly that the Legislature has preempted the area of plans and specifications and vested it exclusively in the Commissioner of Education. Plaintiff urges that beyond this point, i.e., in the field of actual construction there has been no pre-emption. It claims that the Legislature has not acted in this sphere and that to insure the health and safety of the pupils and the community, the police power of the town must be exercised in the enforcement of its Plumbing Code and Ordinance.
Plaintiff cannot sustain this contention. The Legislature clearly has given the Commissioner of Education and the school boards the power and the obligation to see that schools are properly constructed. The Boards of Education are empowered to construct schools (Education Law, § 1709, subd. 6; §§ 1804, 1805) and the work must be designed and supervised by a licensed architect (Education Law, § 7203). Section 101 of the General Municipal Law requires when the cost of construction exceeds $50,000 that separate specifications be prepared for plumbing and gas fitting and for heating, ventilating and air conditioning and section 103 of the General Municipal Law mandates that contracts of this type be awarded to the lowest *768 responsible bidder. The proof herein shows the elaborate and adequate inspection and supervision of every stage of construction by qualified persons to insure the erection of the buildings in accordance with the plans and specifications, the adequacy of which has not and cannot be questioned.
Having conceded that it has no control over the plans and specifications, plaintiff cannot enforce the balance of the code against Hopper. Permits are issued only when the plans comply with the code provisions (art. 14, § 14.3.2) and inspections are made to insure compliance with the code and to assure installation and construction of the system in accordance with approved plans (art. 13, § 13.1.1). Since the plans and specifications are those of the school boards approved by the Commissioner of Education and not subject to review or scrutiny by the plaintiff’s plumbing board, the issuance of a permit and the inspection as provided by the ordinance became meaningless and can have no applicability to Hopper.
The court does not have before it any proof of the capacity of these schools, the intended date of completion and the facilities that are being used to provide for the children until these schools are ready. The court, however, can take judicial notice of the rapidly expanding population in Dutchess County and, in particular, in the Town of Poughkeepsie and the resultant pressing need for greatly expanded school facilities. The performance of these contracts has been stayed now for a period in excess of three and one-half months. This situation coupled with the showing that these contracts will be performed safely and properly without control or regulation by plaintiff impels the court to free the school districts from this municipal regulation and restriction. This consideration was aptly discussed in the minority decision of the Appellate Division herein: “ Obviously, if the plumbing code’s requirement for the licensing of the plumbing contractor were to be enforced here, the frustration of the governmental power delegated to the school districts is as potentially successful as would be the enforcement of the municipal building code against the school district itself. If there is conflict between the delegation by the State to one agency of its duty and function to provide education to its people and the delegation by the State to another agency of its duty and function to supervise and control the construction of buildings by safe and hygienic methods, we should reconcile the conflict by determining whether, on balance, the exercise by one agency of its power without the regulation of the other agency will result in any palpable danger to the public. Here the danger of public harm from the violations of safety or health standards *769 in the erection of school buildings free from the local ordinances, in the light of the restrictions and safeguards of the Education Law and General Municipal Law, is slight as compared to the more damaging frustration of the educational mandate through local delays and interference.” (23 A D 2d 884, 886.)
The complaint is thus dismissed and the temporary injunction is vacated.